IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOE E. DAVIS,

      Plaintiff,

v.                                                    CASE NO. 2:08-cv-01101

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Joe E. Davis (hereinafter referred to as "Claimant"), filed an application for DIB on May 13, 2003, alleging disability as of August 6, 2002, due to back problems resulting from a gunshot wound.  (Tr. at 63-63B, 77.)  Claimant's insured status for DIB purposes expired on March 31, 2008.  (Tr. at  22.)  The claim was denied initially and upon reconsideration.  (Tr. at 41-44, 46-48.)  On December 8, 2003, Claimant requested a hearing

before an Administrative Law Judge ("ALJ").  (Tr. at 49.)  The

hearing was held on August 30, 2005, before the Honorable Elia

Larocca.  (Tr. at 387-408.)  The ALJ conducted a supplemental

hearing on December 28, 2005.  (Tr. at 409-37.)  By decision dated

February 24, 2006, the ALJ determined that Claimant was not

entitled to benefits.  (Tr. at 22-29.)  The ALJ's decision became

the final decision of the Commissioner on August 29, 2008, when the

Appeals Council denied Claimant's request for review.  (Tr. at 4-

7.)  On September 16, 2008, Claimant brought the present action

seeking judicial review of the administrative decision pursuant to

42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the

burden of proving a disability.  See Blalock v. Richardson, 483

F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the

"inability to engage in any substantial gainful activity by reason

of any medically determinable impairment which can be expected to

last for a continuous period of not less than 12 months . . . ."

42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims.  20 C.F.R.

§ 404.1520 (2006).  If an individual is found "not disabled" at any

step, further inquiry is unnecessary.  Id. § 404.1520(a).  The

first inquiry under the sequence is whether a claimant is currently

engaged in substantial gainful employment.  Id. § 404.1520(b).  If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

substantial gainful activity since the alleged onset date.  (Tr. at 24.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of sprains and strains, specifically in his back.  (Tr. at 24.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 25.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 25.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 27.)  Nevertheless, the ALJ concluded that Claimant could perform sedentary jobs such as hand packer, assembler and production inspector, which exist in significant numbers in the national economy.  (Tr. at 28.)  On this basis, benefits were denied.  (Tr. at 29.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was thirty-eight years old at the time of the

administrative hearing.  (Tr. at 412.)  Claimant graduated from

high school.  (Tr. at 412.)  In the past, he worked as a van driver

for the mentally challenged and the elderly, in apartment

maintenance, as a stocker and in warehouse production.  (Tr. at

413, 420, 430.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will summarize it briefly below.

During his interview with a representative of Social Security

to complete a Function Report – Adult, Claimant had a panic attack.

(Tr. at 98.)

The record includes chiropractic treatment notes dated June 5,

2000, through June 27, 2005.  (Tr. at 114-224, 268-338, 343-70.)

On June 18, 2003, Robert C. Woskobnick, D.O. conducted a consultative examination.  Claimant reported that he last worked in October, 2002, and injured his back while helping a female adult into the van he was driving.  In 2000, Claimant fell through a floor and injured his back.  Claimant also reported a gunshot wound in 1993.  (Tr. at 225.)  Claimant reported occasional drug and alcohol use.  (Tr. at 226.)  Claimant's medications included Cyclobenzaprine, Vicodin, Ibuprofen, Baclofen, Topamax, Vioxx, Naproxen and Tramadol.  (Tr. at 226.)  Claimant had a very antalgic gait without using his cane and then also when he used his cane. (Tr. at  226.)  Claimant had stiffness in range of motion of the dorsolumbar spine and pain with walking.  (Tr. at 227.)  Romberg sign was negative.  Deep tendon reflexes were 2/4 bilaterally in the upper and lower extremities.  Claimant had positive straight leg raising in the right lower extremity.  (Tr. at 227.)  Dr. Woskobnick's diagnoses included back pain, possibly herniated nucleus pulposus.  He assessed Claimant as follows:

> Mr. Davis would be unable to lift anything more than five pounds, certainly for no length of time greater than two hours a day.  The patient would be able to stand for up to 10 minutes at a time as long as he could rest 10 minutes.  He would be able to walk for up to 100 feet as long as he could use his cane and then rest 15 minutes after this.  The patient would be able to sit for up to four hours a day as long as he could get up 10 minutes on each hour to stretch about.  The patient's ability to climb, balance, stoop, crouch, kneel and crawl are entirely restricted because of his back pain.  Physical functions of reaching, handling and pushing are impaired

in the standing and walking position, but would not be impaired in the seated position as long as he did not exceed the weight restriction. Physical functions of feeling, seeing, hearing and speaking are not impaired. There would be no environmental restrictions for Mr. Davis at this time.

Once again, Mr. Davis' abilities are limited secondary to his chronic back pain.

(Tr. at 227-28.)

X-rays of the lumbosacral spine on June 18, 2003, were normal, except for the presence of a bullet fragment just to the left of the T11 vertebral level.  (Tr. at 229.)

On July 23, 2003, Claimant reported to Netcare Clinical Screening at the request of the Social Security office after he had a panic attack in their office.  Claimant reported he was advised today that he would no longer remain eligible for workers' compensation payments and became very upset.  Claimant expressed vague suicidal ideation, but reported no previous attempts. Claimant had poor eye contact and stared off into space at times. (Tr. at 234-35.)  Claimant stated that the man who shot him in 1993 was after him.  (Tr. at 236.)  Claimant's psychomotor activity was tense.  His affect was congruent with his mood.  His attention span was adequate.  His thought process was circumstantial.  Claimant reported auditory hallucinations.  Claimant's judgment, recent memory and remote memory were all fair.  Claimant's reliability was questionable.  (Tr. at 239.)  Andrea Banton, L.S.W. diagnosed adjustment disorder with mixed anxiety and depression on Axis I and

7

deferred an Axis II diagnosis.   She rated Claimant's GAF at 45. (Tr. at 240.)   Claimant was discharged on July 23, 2003, and instructed to return the next day to see the psychiatrist.  (Tr. at 244.)

On September 5, 2003, Meg Metts, Ph.D. examined Claimant at the request of the State disability determination service. Claimant reported that he had never been involved in outpatient counseling, nor has he had psychological testing, attempted suicide or had a nervous breakdown.  Claimant reported that he has never been prescribed medication for nerves or mental health problems. (Tr. at 245.)  Claimant had inconsistent eye contact.  His affect was blunted with dysphoric quality.  Claimant's tone was sad, and his prevailing mood was one of moderate depression and moderate anxiety.  Claimant reported difficulty sleeping and crying spells. Claimant reported some suicidal ideation, but stated that he would not actually carry it out.  Claimant reported nervousness around crowds.  Claimant was alert and oriented to person, place and time. His  immediate  auditory  skills  were  nearly  average.   His concentration was good.  He maintained a very slow pace of task and had excellent task persistence.  (Tr. at 247.)  Claimant's social judgment and comprehension abilities, as measured by the WAIS-III, were below average.  On the WAIS-III, Claimant attained a verbal IQ score of 79, a performance IQ score of 79 and a full scale IQ score of 77, placing him in the borderline range of functioning.  Dr.

8

Metts opined that due to Claimant's mental impairments, Claimant probably functions in the low average range. (Tr. at 24.) On the WRAT-III, Claimant's reading ability was at the high school level, while his spelling was at the seventh grade level. (Tr. at 248.) Dr. Metts diagnosed posttraumatic stress disorder, chronic and panic disorder without agoraphobia on Axis I and made no Axis II diagnosis. (Tr. at 249.) She rated Claimant's GAF at 45. (Tr. at 249.) Claimant had difficulty relating to others during the examination. He had no difficulty following directions and would have no problem "completing simple, routine tasks." (Tr. at 250.) Claimant's ability to maintain attention, concentration and to perform simple repetitive tasks appeared to be unimpaired. Finally, Dr. Metts opined that Claimant's ability to withstand stress and pressure associated with daily work activity "is likely to be poor at this time. He does not have a healthy outlet for stress and has not effectively managed stress in the past. He would not be productive in a work environment with any amount of mental/emotional stress." (Tr. at 250.)

On November 12, 2003, Bruce J. Goldsmith, Ph.D., a State agency medical source, completed a Psychiatric Review Technique form and opined that a residual functional capacity assessment was necessary. (Tr. at 252.) He evaluated Claimant's panic disorder without agoraphobia, but rated only one of the four areas of functioning (repeated episodes of decompensation - none). (Tr. at

9

262.)

Dr. Goldsmith completed a Mental Residual Functional Capacity Assessment and opined that Claimant had moderate limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent pace and without an unreasonable length and number of rest periods, interact with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation.  (Tr. at 266.)

Under the section of the Mental Residual Functional Capacity Assessment entitled "functional capacity assessment," Dr. Goldsmith wrote that "[a]nxiety limits reliability, extended concentration, pace and task persistence.  [Claimant] would not relate well to the public, supervisors or co-workers, or work well in close proximity to others.  He is limited to routine, nonpublic tasks, with minimal interpersonal contact and without strict time or production demands."  (Tr. at 267.)

On April 6, 2005, Scott M. Otis, M.D. examined Claimant at the request of his chiropractor.  Claimant reported he was currently not taking any medication, but had been on Vioxx, Celebrex, Topomax and Flexeril in the past.  (Tr. at 339.)  Dr. Otis reviewed a CT scan from 2000, which showed some mild disc bulges at the lower two levels, but was otherwise unremarkable.  Claimant's gait was slow, deliberate and antalgic.  Claimant had no significant muscle guarding.  Lumbar range of motion was globally restricted with all pain located in the axial spine.  Strength examination was 5/5 bilaterally in the lower limbs and normal with no focal deficits. Sensory examination was intact to light touch, pin prick and temperature in the bilateral lower limbs in all dermatomes.  (Tr. at 340.)  Dr. Otis diagnosed chronic mechanical low back pain with significant myofascial symptomatology overlaying symptom magnification and chronic pain syndrome and diffuse leg complaints, right greater than the left with previous contusion.  (Tr. at 341.) Dr. Otis saw no evidence of focal disc herniation.  Dr. Otis noted the lack of up-to-date objective testing.  Dr. Otis requested authorization for a CT myelogram and an EEG of the right lower limb.  If both were negative, Dr. Otis suggested physical therapy and chronic pain management.  (Tr. at 341-42.)

On September 27, 2005, James J. Powers, M.D. examined Claimant at the request of the ALJ.  Claimant reported low back and leg pain and occasional pain into the arms.  Claimant reported participation

11

in a work conditioning program and physical therapy.  Claimant also used a TENS unit, reporting some relief.  (Tr. at 371.)  Claimant was mildly tender in the cervical paraspinals.  Spurling maneuver was negative for radiculopathy.  Claimant had no sensory loss or focal weakness on muscle testing.  Sensory exam to light touch and pin was intact in both lower limbs.  Dr. Powers diagnosed chronic pain, musculoskeletal discomfort, deconditioning.  (Tr. at 372.)

Dr. Powers completed an assessment on which he opined that Claimant could perform light work, could stand and/or walk for at least two hours in an eight-hour workday, must periodically alternate sitting and standing, was limited to pushing or pulling twenty pounds with the upper extremities, could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel, crouch, crawl and stoop and would have limitations related to hazards. (Tr. at 382-85.)

At the first administrative hearing, the ALJ called James Parker, M.D., a neurologist, to testify.  Dr. Parker testified that Claimant had chronic mechanical back pain and chronic anxiety. (Tr. at 404.)  Dr. Parker testified that "[t]here is no evidence, however, of neurologic dysfunction or a primary muscle disease, so it, this sort of pain problem is called a mechanical back problem to separate it from a radiculopathy or myelopathy." (Tr. at 405.) Dr. Parker indicated that while Claimant did not meet a listing, there were no current diagnostic tests of record.  When asked by

the ALJ if he was suggesting that the ALJ order a consultative examination, Dr. Parker indicated that he would suggest Claimant undergo an EMG and neuroconduction studies of the lower extremities because of possible lumbar radiculopathy. (Tr. at 406.) The ALJ agreed, and Claimant was examined by Dr. Powers.

At the supplemental hearing, Dr. Parker testified again. Dr. Parker noted the similarities between the examination by Dr. Otis and Dr. Powers. He opined that Claimant's pain complaints were subjective and that there was no evidence of radiculopathy upon examination by Dr. Powers. (Tr. at 424.) Dr. Parker opined that Dr. Powers' assessment of Claimant's functional limitations was reasonable. (Tr. at 426.)

The ALJ posed a hypothetical question including the limitations opined by Dr. Parker, i.e., the limitations opined by Dr. Powers (Tr. at 427), and the vocational expert identified the sedentary jobs of hand packer, assembler and production inspector. (Tr. at 433.)

When mental limitations from Dr. Goldsmith were included in the hypothetical question, the vocational expert testified that while the number of jobs identified would be reduced, Claimant could still work. (Tr. at 434.) When the mental limitations opined by Dr. Metts were included, in particular, that Claimant would not be productive in a work environment with any amount of mental or emotional stress, the vocational expert testified that

Claimant could not work with such limitations.  (Tr. at 435.)

Claimant's Challenges to the Commissioner's Decision

     Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in acting as her own medical expert with respect to Claimant's mental impairments; and (2) the ALJ erred in assessing Claimant's credibility.  (Pl.'s Br. at 10-22; Pl.'s Reply at 1-10.)

     The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant was not disabled; (2) the ALJ did not err in her findings related to Claimant's alleged mental impairments; (2) the ALJ did not err in failing to order a consultative examination; and (3) the ALJ's findings related to Claimant's credibility are supported by substantial evidence. (Def.'s Br. at 12-24.)

     The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence. First, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant does not suffer a severe mental impairment is not supported by substantial evidence.  The State agency medical source, the psychologist who conducted a consultative examination at the request of the State disability determination service and even the medical expert at the administrative hearings noted the existence of severe mental impairments.  The ALJ rejected the opinion of Dr. Metts because the

14

ALJ believed it was internally inconsistent in that Claimant "performed adequately on all of the tests ...." (Tr. at 25.) In turn, the ALJ rejected the opinion of Dr. Goldsmith because it was based on the evidence of Dr. Metts, which the ALJ determined "[appeared] to be based on the consulting psychologist's reports of the claimant's statements, and not on any review of treatment records or objective testing. Therefore, the undersigned finds that these assessments can not be given significant weight (Exhibit 6F)." (Tr. at 25.)

The ALJ does not mention the testimony of the medical expert in her decision. Furthermore, the ALJ rejected the opinion of the State agency medical source because he purportedly relied on Dr. Metts' opinion, but this is not clear from the State agency medical source's opinion. As such, the court proposes remand for a more thorough evaluation of Claimant's mental impairments in compliance with 20 C.F.R. § 404.1520a (2006).

The court further proposes that the presiding District Judge find that the ALJ did not comply with the requirements of 20 C.F.R. § 404.1529(b) (2006) or Social Security Ruling ("SSR") SSR 96-7p, 1996 WL 374186 (July 2, 1996). While the ALJ determined that Claimant had a medically determinable impairment that could be expected to produce Claimant's alleged symptoms (Tr. at 26), her decision does not contain a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity

15

of Claimant's pain, precipitating and aggravating factors and Claimant's medication.  Instead, the ALJ states only that

> [t]he record is replete with reports of the claimant of significant pain, and opinions of physicians that they were unable to explain the pain through any objective measurement.  There is also mention of significant pain behavior which appeared out of proportion to the movement required for the examinations.  Although the undersigned acknowledges the claimant does experience pain, the pain is not such that his ability to perform work related activity is inconsistent with the residual functional capacity assessed herein (SSR 96-7p).

(Tr. at 26.)  The ALJ's findings are conclusory and not in compliance with the above-referenced regulation and SSR.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

___May 20, 2010___
         Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge